UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                       )
MANSOUR FADAIE, *et al.*,              )   No. C03-2421L
                                       )
                  Plaintiffs,          )
                                       )
       v.                              )
                                       )   AMENDED ORDER GRANTING
ALASKA AIRLINES, INC., *et al.*,       )   IN PART DEFENDANTS' MOTION
                                       )   FOR SUMMARY JUDGMENT
                  Defendants.          )
_____)

This matter comes before the Court on "Defendants' Motion for Summary Judgment" on all of plaintiffs' remaining claims. Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude the entry of judgment as a matter of law.[1] The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts

---

[1] The Court has not considered the late-filed evidence submitted by plaintiffs at Docket # 82 and 88 or the deposition testimony submitted by defendants during oral argument.

AMENDED ORDER GRANTING IN PART
MOTION FOR SUMMARY JUDGMENT

showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient," however, and factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).

Taking the evidence presented in the light most favorable to plaintiff and having heard the arguments of counsel, the Court finds as follows:

(1) The Washington Law Against Discrimination makes it an unfair practice for an employer "to refuse to hire" or "to discriminate against any person in compensation or in other terms and conditions of employment because of age, sex, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a disabled person . . . ." RCW 49.60.180(1) and (3). To establish a *prima facie* case of national origin or religious discrimination under state law, plaintiffs must demonstrate that (a) Mr. Fadaie is a member of a protected class, (b) he was satisfactorily performing his job, (c) he suffered an adverse employment action, and (d) similarly situated employees who were not in the protected class were treated more favorably. Grimwood v. University of Puget Sound, Inc., 110 Wn.2d 355, 362-64 (1988). Although the standards used to evaluate the parties' evidence varies somewhat,[2] the burdens of proof shift under state law just as they do under the McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), analysis. See Chen v. State, 86 Wn. App. 183, 189 (1997). Plaintiffs' initial burden is to show that the

---

[2] For example, how plaintiffs demonstrate that defendants' legitimate, non-discriminatory reasons for their conduct are not worthy of belief varies slightly under state and federal law.

AMENDED ORDER GRANTING IN PART
MOTION FOR SUMMARY JUDGMENT        -2-

employer's conduct, if left unexplained, gives rise to an inference that it is more likely than not that such actions were "based on a discriminatory criterion illegal under the Act." Furnco Constr. Corp. v. Waters, 438 U.S. 567, 575 (1978). See also Bodett v. CoxCom, Inc., 366 F.3d 736, 743 (9th Cir. 2004). Plaintiffs' burden in establishing a *prima facie* case is minimal and need only give rise to an inference of unlawful discrimination. If the elements of the *prima facie* showing are satisfied, plaintiffs are entitled to a presumption that their employer unlawfully discriminated against them. Lyons v. England, 307 F.3d 1092, 1112 (9th Cir. 2002).

Once a *prima facie* case has been presented, the burden shifts to defendants "to articulate a legitimate, nondiscriminatory reason" for the adverse employment decision. Aragon v. Republic Silver State Disposal, Inc., 292 F.3d 654, 658 (9th Cir. 2002). If defendants are able to rebut the presumption of discrimination raised by the *prima facie* showing, plaintiffs may avoid summary judgment by producing enough evidence to allow a reasonable factfinder to conclude that "(1) the employer's reasons have no basis in fact; or (2) even if the reasons are based on fact, the employer was not motivated by the reasons; or (3) the reasons are insufficient to motivate the adverse employment decision." Chen, 86 Wn. App. at 190.[3]

(2) Plaintiffs assert that Mr. Fadaie was denied a promotion to the Manager, Tool Control position because of his national origin. The only evidence to support this claim is that his supervisor made three racially-based comments and that, approximately one year later, his application for the Manager, Tool Control position was rejected in favor of a native-born applicant. Two of the comments on which this claim rests were aimed at races of which Mr. Fadaie is not a member and cannot support a claim of discrimination against Iranians in general or Mr. Fadaie in particular. Thus the only comment at issue is Mr. Flower's statement that Mr.

---

[3] Under federal law, plaintiffs can avoid judgment and overcome defendants' legitimate nondiscriminatory reason for their actions by showing either (1) that defendants' proffered reasons for the adverse employment action were false or (2) that the true reasons for the action were discriminatory in nature. Warren v. City of Carlsbad, 58 F.3d 439, 443 (9th Cir. 1995).

AMENDED ORDER GRANTING IN PART
MOTION FOR SUMMARY JUDGMENT            -3-

Fadaie was a "good Iranian."

Assuming, for purposes of this case, that plaintiffs have presented a *prima facie* case regarding national origin discrimination, defendants have articulated legitimate nondiscriminatory reasons for their decision to hire Mr. Dart as the Manager, Tool Control. Plaintiffs have provided nothing more than speculation to rebut those reasons. In fact, plaintiffs opposition memorandum does not specifically address the national origin discrimination claim at all, leaving defendants' evidence of a legitimate nondiscriminatory reason for its conduct unrebutted. Summary judgment in favor of defendants is therefore appropriate on plaintiffs' national origin discrimination claim.

(3) Plaintiffs allege that Mr. Fadaie was placed on a performance plan and ultimately demoted because of his religion. Plaintiffs argue that, shortly after Mr. Fadaie rebuffed his supervisor's conversion efforts and made it clear that he would not convert to Christianity, Mr. Deason, his supervisor, became unfriendly, placed him on a performance plan without providing any of the support Mr. Fadaie would need to succeed, and ultimately demoted plaintiff. At his deposition, plaintiff testified that he told Mr. Deason he would not convert and experienced an adverse change in attitude within two or three months of Mr. Deason's arrival at Alaska Airlines. Since Mr. Deason began working at Alaska in March 2001, the event which allegedly triggered Mr. Deason's ill will would have occurred sometime in May or June 2001.[4] The adverse employment actions of which plaintiffs complain occurred in April 2002 (implementation of performance plan) and July 2002 (demotion).

---

[4] Having "given clear answers to unambiguous [deposition] questions which negate the existence of any genuine issue of material fact" regarding the date on which Mr. Fadaie told Mr. Deason he would not convert, plaintiffs cannot thereafter create a genuine issue by producing "an affidavit that merely contradicts, without explanation, previously given clear testimony." Marshall v. AC&S, Inc., 56 Wn. App. 181, 185 (1989) (quoting Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984)). Defendants' request to strike the conflicting testimony at page 22 of Mr. Fadaie's declaration is GRANTED.

AMENDED ORDER GRANTING IN PART
MOTION FOR SUMMARY JUDGMENT           -4-

Plaintiffs have not established a *prima facie* case of religious discrimination. Starting in exactly the time frame at issue here (2001-2002), Alaska Airlines raised the performance and accountability expectations for maintenance department managers. Although plaintiffs have provided evidence suggesting that Mr. Fadaie was performing satisfactorily under the old standards, they have not provided any evidence regarding his performance under the heightened standards. In addition, the record shows that Mr. Fadaie was treated the same as other similarly situated employees who were not part of his protected class: all three supervisors reporting to Mr. Deason were placed on performance plans (along with fifteen other managers in the maintenance department). Several of these managers, including both plaintiff and another manager supervised by Mr. Deason, failed their performance plans in 2002 and were ultimately terminated. Thus, there is no evidence from which one could conclude that Mr. Fadaie was treated differently that similarly situated employees who were not part of his protected class. When considered with the extended period of time between plaintiff's refusal to convert and the date he was placed on a performance plan, plaintiff's evidence does not give rise to an inference that defendants' actions were "based on a discriminatory criterion illegal under the Act." Furnco Constr., 438 U.S. at 575. Summary judgment in favor of defendants is therefore appropriate on plaintiff's religious discrimination claim.

(4) The Washington Law Against Discrimination also makes it an unfair practice "for any employer . . . to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden in this chapter . . . ." RCW 49.60.210(1). To prove his claim of retaliation, plaintiff must show that (a) he was engaged in statutorily protected activity, (b) there was an adverse employment action taken, and (c) retaliation was a substantial factor motivating the adverse action. Kahn v. Salerno, 90 Wn. App. 110, 128-29 (1998).

(5) In or around August 1999, Mr. Fadaie complained to human resources that his then-supervisor, Mr. Flowers, had instructed him to not hire African Americans. According to

AMENDED ORDER GRANTING IN PART
MOTION FOR SUMMARY JUDGMENT            -5-

plaintiffs, between December 1999 and January 2001, Mr. Flowers and his supervisor, Mr. Fitzpatrick, pressured plaintiff to recant or revise his allegations by threatening his social relationships with fellow employees, disparaging plaintiff in front of others, and stating that plaintiff would be fired.  Plaintiff asserts that other management personnel, namely Mr. Weaver, Mr. Knox, and Ms. Green, treated him coldly after he complained about Mr. Flowers' hiring instructions.

Plaintiff asserts that his application for the position of Manager, Tool Control was rejected in December 2000 in retaliation for his complaint against Mr. Flowers.  There is no evidence from which a reasonable jury could conclude that Mr. Fadaie's complaint against Mr. Flowers was a substantial factor in the decision to give the Manager, Tool Control position to someone else.  Plaintiffs do not allege, much less offer evidence to prove, that the four individuals involved in hiring for the new Manager, Tool Control position were aware of plaintiff's complaint or had any interest in punishing Mr. Fadaie for reporting inappropriate behavior on the part of a manager who was soon to be fired.[5]  In fact, the only evidence provided by plaintiff on this point suggests that the complaint against Mr. Flowers was not a factor in the hiring decision at all.  Plaintiff had been told that the vice president who was making the hiring decision, Mr. Hirshman, would make plaintiff the fall guy "for the tool conformity inspection check." Fadaie Decl. at 15. There is no indication that Mr. Hirshman or the interviewers who advised him were at all motivated to retaliate against Mr. Fadaie for his complaint against Mr. Flowers.  Summary judgment in favor of defendants is therefore appropriate on plaintiffs' retaliation claim to the extent it is based on his complaint against Mr. Flowers.

(6) In contrast, there is ample evidence from which the jury could conclude that Mr. Fadaie's termination was motivated by retaliation for his objections to the tool inspection

---

[5] Mr. Flowers' employment with Alaska Airlines was terminated in January 2001.

AMENDED ORDER GRANTING IN PART
MOTION FOR SUMMARY JUDGMENT           -6-

certification process following the crash of Alaska Flight 261.[6]  Taking the evidence in the light most favorable to plaintiffs, one could conclude that Mr. Fadaie's direct and indirect supervisors were very unhappy that he took it upon himself to contradict the company's certification of tools, that he supported an employee who refused to certify tools, and that he complained to the press, senior company management, and the FAA regarding inspection and safety issues.  As early as November 2000, plaintiff was told by his then-supervisor that Mr. Hirshman was out to get him: "He will make you the 'fall guy' for the tool conformity inspection check.  He will never promote you.  In fact, he will wait until everything is normal.  Six months to a year later when you are feeling good, he will hand you your pink slip."  Fadaie Decl. at 15.  Over the course of the next thirty months, Mr. Fadaie was repeatedly advised to mind his own business when it came to the tool inspection process.  When he continued to make complaints and identify shortcomings in the company's inspection procedures and certifications, Mr. Fadaie was subjected to a series of adverse employment actions.[7]  When he again raised the tool conformity issue with senior management in February 2003, he was removed from any active role in the tool inspection process and, shortly thereafter, placed on administrative leave and terminated.

Defendants argue that plaintiff's removal from the bargaining unit and subsequent termination were caused by the union's objection to plaintiff's return to the union ranks.  Defendants may, of course, pursue this argument at trial in an attempt to show that retaliation for Mr. Fadaie's whistleblowing activities was not a substantial factor in his termination.  However, one could reasonably infer from plaintiff's demotion to an untenable position, the company's

---

[6] Pursuant to the "Order Granting In Part Defendants' Motion to Dismiss," plaintiffs' termination-related claim are not barred by the doctrine of *res judicata* because the termination did not occur until after his administrative complaint was finally resolved.

[7] Although plaintiffs cannot recover damages related to Mr. Fadaie's placement on a performance plan and his demotion, those events are relevant to their termination-related claims insofar as they help establish retaliatory motive.

abandonment of its "layoff" argument shortly after plaintiff decided not to appeal the Department of Labor's administrative decision, the company's decision to terminate Mr. Fadaie from his supervisory position, and the promotion of the employee who challenged plaintiff's union membership that, although the union's activities may have played a role in plaintiff's termination, retaliation was a substantial factor behind the adverse action. Plaintiffs' claim that Mr. Fadaie was terminated in retaliation for his protected activities may proceed to trial.

(7) Contrary to defendants' argument, plaintiffs' termination-related claims do not arise out of the resolution of the grievance that removed Mr. Fadaie from the union workforce and are therefore not preempted by the Railway Labor Act ("RLA"). Edelman v. Western Airlines, Inc., 892 F.2d 839, 843-44 (9th Cir. 1989); 45 U.S.C. § 151 *et seq*. Plaintiff was terminated from a supervisory position, notwithstanding his intervening stint as a union employee. In addition, to the extent his retaliation and wrongful termination claims are based on rights that exist independent of the collective bargaining agreement, they may not be preempted by the RLA. Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 264-65 (1994).

(8) Plaintiffs must establish four necessary elements to succeed on their claim of wrongful discharge in violation of public policy under Washington law: (a) that a clear public policy exists; (b) that discouraging the conduct in which Mr. Fadaie engaged would jeopardize the public policy; (c) that the public-policy-linked conduct caused the dismissal; and (d) that defendants have not presented an overriding justification for the dismissal. Roberts v. Dudley, 140 Wn.2d 58, 64-65 (2000). After assuming for purposes of this motion that plaintiffs can satisfy the first two elements of a wrongful discharge claim, defendants argue that it was the union's opposition to Mr. Fadaie's employment in the bargaining unit that caused his dismissal. As discussed above, there is ample evidence from which one could conclude that defendants ultimately controlled the decision to terminate Mr. Fadaie's employment and that the decision was prompted by his whistleblowing activities. Plaintiffs' claim that Mr. Fadaie was wrongfully

AMENDED ORDER GRANTING IN PART
MOTION FOR SUMMARY JUDGMENT            -8-

discharged in violation of public policy may proceed to trial.

(9) Plaintiffs have abandoned their claims of outrage and negligent infliction of emotional distress. Summary judgment in favor of defendants is therefore appropriate on those claims.

(10) Washington law governs all of plaintiffs' remaining claims: their reliance on Title VII cases regarding the calculation of the number of employees a defendant has is misplaced. Before the corporate form will be disregarded under Washington law, plaintiffs must show that defendants intentionally used the forms to violate or evade a duty and that disregard is necessary to prevent an unjustified loss to plaintiffs. Meisel v. M&N Modern Hydraulic Press Co., 97 Wn.2d 403, 410 (1982); Norhawk Investments, Inc. v. Subway Sandwich Shops, Inc., 61 Wn. App. 395, 399 (1991). Neither the evidence provided nor the bare facts asserted by plaintiffs raise an inference that defendants abused the corporate forms to the benefit of their stockholders and to the detriment of potential creditors. Truckweld Equip. Co. v. Olson, 26 Wn. App. 638, 644-45 (1980). Summary judgement regarding all claims against defendant Alaska Air Group, Inc., is therefore appropriate.

For all of the foregoing reasons, defendants' motion for summary judgment is GRANTED in part and DENIED in part. Plaintiffs' claims of national origin and religious discrimination, Flowers-related retaliation, outrage, and negligent infliction of emotional distress are dismissed. In addition, all of plaintiffs' claims against defendant Alaska Air Group, Inc., are hereby dismissed. Plaintiffs may proceed to trial with their termination-related retaliation and wrongful discharge claims.

Dated this 26th day of May, 2005.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge